

**SO ORDERED.**

**SIGNED this 24th day of January, 2012.**

Dale L. Somers
United States Bankruptcy Judge

___

Designated for on-line use but not print publication.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| REX VEECH YOUNGQUIST, | CASE NO. 11-10135<br>CHAPTER 7 |
| Debtor. | |
| J. MICHAEL MORRIS, Trustee, | |
| Plaintiff, | |
| v. | ADV. NO. 11-5073 |
| GAIL S. YOUNGQUIST, | |
| Defendant. | |
| PETER E. PRATT, JR., | |
| Intervener. | |

**MEMORANDUM OPINION FOLLOWING EVIDENTIARY HEARING AND
SUBMISSION OF POST-TRIAL BRIEF**

This adversary proceeding was filed by the Chapter 7 Trustee, Michael J. Morris, under 11 U.S.C. 363(h) to sell both the estate's interest and the interest of Defendant Gail S. Youngquist in the Villa 26 Apartments owned by Defendant and Debtor, Rex Veech Youngquist.[1] Peter E. Pratt, Jr., who claims an interest in the property as receiver for the State of Texas, was allowed to intervene. An evidentiary hearing was held on November 16, 2011.[2] At the close of evidence, the Court left the record open and requested briefing by the Trustee on the question of benefit to the estate if the property were sold. The Court also ruled that Defendant could file a responsive pleading if she desired. Trustee filed a brief, but Defendant did not.

Having considered the testimony, the exhibits, and the Trustee's post-trial brief, the Court is now ready to rule. The Court makes the following findings of fact and conclusions of law and concludes the Trustee has not sustained his burden to prove benefit to the estate from the proposed sale. The record is left open for further proceedings if circumstances change so there would be a direct financial benefit to the estate from such a sale.

**FINDINGS OF FACT.**

Debtor Rex Veech Youngquist ("Debtor") filed this Chapter 7 case pro se. His Schedule A lists four parcels of real property - (1) the North Lawrence Land, valued at $170,000; (2) Villa

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). There is no objection to venue or jurisdiction over the parties.

[2] The Plaintiff Trustee appeared by J. Michael Morris of Klenda, Mitchell, Austerman & Zuercher, L.L.P. Debtor and Defendant appeared pro se. Peter E. Pratt appeared by Thomas J. Lasater of Fleeson, Gooing, Coulson & Kitch, L.L.P. Creditor Reverend Bruce Curtis also appeared pro se. There were no other appearances.

26 Apartments ("Villa 26"), property at issue in this proceeding; (3) the Four Wheel Drive property, valued at $700,000; and (4) a duplex, valued at $100,000. The first three parcels are located in Lawrence, Kansas, and the fourth is located in Ft. Myers, Florida.

Villa 26 is a 72 unit apartment complex, comprised of nine buildings. There are one, two, and three bedroom units. Each unit has parking or a garage, its own appliances, and central air conditioning and heat. There is no club house or pool. The complex was constructed in approximately 1988 and has been owned by the Youngquist family since that time.[3] Title is currently in Debtor and Gail Youngquist, as joint tenants. No attempt has been made to rebut the inference that Gail Youngquist is a 50% owner.

Villa 26 was mortgaged when acquired. The outstanding note, secured by a mortgage on the property, is for $2.2 million and is held by Royal Neighbors of America. The balance due as stated in the creditor's proof of claim is $1,702,251.63. Other liens on Villa 26 are: Real estate taxes for the second half of 2010 in the amount of $20,164.43 and 2011 taxes in the approximate amount of $40,000; and a judgment lien arising from a Texas judgment registered in Douglas County, Kansas.

---

[3] Debtor and his wife, Anbeth Youngquist, acquired title to Villa 26 by warranty deed dated July 27, 1988. On April 12, 1994, Debtor and his wife quit claimed the property to themselves and their daughter, Gail Youngquist, as joint tenants with right of survivorship. Debtor's wife died in 2000 or 2001. On December 27, 2004, Debtor and Gail Youngquist quit claimed their interest to the Believer Foundation. But this deed was set aside as fraudulent by order of the District Court of Douglas County entered on May 23, 2007, and the order was recorded in the Douglas County Real estate records. The most recent deed to the property is a Special Warranty Deed, dated October 4, 2010, filed with the Douglas County Register of Deeds on October 5, 2010, under which Peter E. Pratt, Jr., as receiver, purported to transfer the property to himself. By Agreed Order Resolving Adversary Action as to Intervener Peter E. Pratt, Jr., as Receiver (dkt. 53), filed after the evidentiary hearing, this deed was set aside and is no longer given effect.

The Texas judgment was entered against Debtor, Gail Youngquist, and others, jointly and severally, in favor of the State of Texas on February 18, 2010, in the District Court of Travis County, Texas for approximately $664,316. Peter Pratt was subsequently appointed receiver to collect the judgment and was granted a fee of 25% on "all proceeds coming into his possession." The Texas judgment was registered in the Douglas County, Kansas on September 13, 2010, giving rise to judgment liens on Debtor's and Gail Youngquist's interests in real property located in the county.[4] Three proofs of claim have been filed relating to the judgment - Peter Pratt as receiver for $868,844.59;[5] Peter Pratt, as receiver for $830,940.69;[6] and Railroad Commission of Texas for $649,172.35.[7] The Trustee asserts that the claims differ from the amount of the judgment because the higher amounts stated in the first two claims include Peter Pratt's fee and that the third claim appears to credit some payments Pratt has received other than through the bankruptcy.[8] The Trustee did not offer evidence of the correct amount of the claim arising from the judgment. In addition, the Trustee has filed an adversary action[9] against Pratt and the State of Texas which, among other things, seeks to partially avoid the judgment liens under the authority of § 727(a). The relief requested by the Trustee, if granted, would reduce the amount of the judgment lien on Villa 26 and the other Douglas County properties to $297,622.35.

---

[4] The judgment lien would not attach to Debtor's exempt homestead property. *Deutsche Bank Nat. Trust Co. v. Rooney*, 39 Kan. App.2d 913, 186 P.3d 820 (2008).

[5] Claim #4.

[6] Claim #10.

[7] Claim #12.

[8] Dkt. 57, pp. 2-3.

[9] Case no. 11-5079

4

Before the bankruptcy was filed, the receiver appointed by the Texas court retained Mr. Fair to manage and sell Villa 26. After the bankruptcy filing, he was retained by the Trustee. Rent proceeds have been used to complete significant deferred maintenance, but mortgage and tax payments have not been made. At the time of the hearing, the complex was at 95% occupancy and in marketable condition.

Mr. Fair believes that Villa 26 would on an average day bring between $2 and $2.5 million at auction, which is the method of sale he proposes, but the price could be as high as $3 million. The appraised value for tax purposes is $2.84 million, but Mr. Fair is of the opinion that tax appraisals are generally high.

Neither Debtor not Gail Youngquist could remember when they last filed federal income tax returns. There was no evidence as to the amount invested in Villa 26 by the Younquists or that depreciation was ever claimed on income tax returns.

Mr. Fair does not believe the property can be divided in half for purposes of sale. There are an odd number of buildings situated on a single long, narrow lot, which the City of Lawrence would not allow to be divided. The economy of scale of a multi-unit complex would be lost if the complex were divided, and the manner in which utilities are supplied would make division difficult. Mr. Fair is also of the opinion that there would be no market for selling an undivided one-half interest. Any purchaser would be taking on the baggage of the co-owner, which in this case could be particularly significant.

Debtor has been retired for a number of years. His testimony was not helpful. He resides with his daughter Gail at the Four Wheel Drive property. In addition to the residence, that

5

property includes other rental units and a separate office building.[10] Gail Youngquist is an artist. Her testimony, although more coherent than that of her father, generally did not respond to the questions asked and wandered to issues not relevant to the proceedings before the Court. Her primary concerns were the circumstances of the Texas judgment and allegedly wrongful conduct by Mr. Fair.

**ANALYSIS AND CONCLUSIONS OF LAW.**

Section 363(h) permits a trustee to sell both the estate's interest, under subsection (b) or (c) of § 363, and "the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if" four conditions are satisfied. They are: "(1) Partition in kind of the property among the estate and any co-owners is impracticable; (2) the estate would realize significantly less from a sale of the estate's undivided interest than from a sale of the property free of the co-owners' interests; (3) the benefit to the estate from the property's sale outweighs any detriment to the co-owners; and (4) the property 'is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.'"[11]

The evidence in this case clearly establishes element one. It would be impractical to partition the Villa 26 Apartments in kind between Debtor and Gail Youngquist. Element two is also established. The evidence is uncontroverted that there is no market for a sale of the estate's undivided interest in the property. Element four is established. The property is an apartment

---

[10] Dkt. 57, p. 7.

[11] 3 *Collier on Bankruptcy* ¶ 363.08[1](Alan N. Resnick & Henry J.Sommer eds.-in-chief, 16th ed. rev. 2010).

6

complex which is not used in the production, transmission or distribution of electric energy or gas.

Satisfaction of the third element is more complex since it requires the Court to balance the benefit to the estate from a sale of Villa 26 with the detriment to Gail Youngquist from such a sale. The Trustee bears the burden to prove benefit to the estate. Only if such a benefit is shown must the Court balance that benefit against the detriment to the co-owner.[12]

The Court finds the Trustee has not proven benefit to the estate from a sale of Villa 26. There is insufficient evidence to determine that the estate would benefit from a sale of the estate's and Gail Youngquist's interest in Villa 26. For purposes of this analysis the Court will assume gross sales proceeds of $2.5 million, a generous estimate. The total liens on the property are $2,411,916,[13] comprised of the first mortgage lien of $1,702,251.63, the tax lien of $60,493.29, and Texas judgment lien of $649,172.35, using the amount of the proof of claim filed by the Railroad Commission of State of Texas. The estimated gross proceeds minus liens is therefore $88,094, which is 3.5 percent of the value. The Trustee presents no evidence of the cost of sale, but costs of 3.5% of value would not be unusual. Further, only 50% of any net proceeds from a sale would be property of the estate. Under these conditions, there would be minimal or no recovery by the estate if the property were sold.

The Trustee presents two arguments that not withstanding these calculations, the estate would benefit. First, he argues that $351,550 of the lien of the Texas judgment is avoidable. But avoidance has not been established. An adversary proceeding asserting this position is pending.

---

[12] 3 *Collier on Bankruptcy* ¶ 363.08[4][c][iii].

[13] *See* Dkt. 57, p. 7.

7

Until that case is resolved, the Court cannot find that there is a real possibility that the estate would benefit from a sale.

As an alternative argument, the Trustee asserts that the benefit to the estate from the sale of Villa 26 cannot be calculated solely by viewing this property alone.[14] He argues that sale of Villa 26 would result in the satisfaction of the Texas judgment, thereby releasing the Four Wheel Drive property and the North Lawrence Land from the encumbrances. And therefore a sale of the North Lawrence Land and the non-exempt portion of the Four Wheel Drive Property would result in value to the estate. The Court rejects this argument for two reasons. First, this alternative argument focuses on the benefit to the estate not directly from the sale of Villa 26 but from subsequent events. Section 363(h) requires benefit to the estate directly from the proposed sale.[15] Because the interests of a co-owner are involved, the order of transactions is material. Second, the Trustee has presented no evidence of value, ownership, and possible exempt status of the additional tracts.

The Trustee has not satisfied his burden to show benefit to the estate from the proposed sale and therefore is not entitled to the relief sought.

The Court also notes that Gail Younquist, who appeared pro se, has presented minimal evidence of detriment to her if Villa 26 were sold by the Trustee. The Court has not been advised whether she relies upon income from the property and whether, if the property is not

---

[14] *Id.*

[15] *See* 3 *Collier on Bankruptcy* ¶363.08[4][c][ii] ("the benefit must be direct").

8

sold, the mortgage holder will refrain from foreclosure.[16] It would seem that a sale would result in adverse tax consequences, but the evidence of this result is minimal.

**CONCLUSION.**

The Trustee has failed to satisfy his burden of showing that all of the conditions required by §363(h) for the Court to approve the sale of the estate's and Gail Youngquist's interest in Villa 26 are present. The Court therefore leaves the record open so the Trustee may request, by motion, an additional evidentiary hearing if circumstances change so that a sale of Villa 26 would result in a substantial cash benefit to the estate. At any such hearing, Gail Youngquist will be provided an opportunity to present additional evidence of detriment to her if such a sale were permitted.

**IT IS SO ORDERED.**

###

---

[16] The Court was informed that the mortgage note was current when the bankruptcy was filed and that Mr. Fair has made arrangements with the lender that despite his failure to maintain the current status of the note, interest will accrue at the non-default rate. Presumably once the deferred maintenance is completed the property will generate sufficient income to service the mortgage debt.

9

Case 11-05073   Doc# 59   Filed 01/24/12   Page 9 of 9